MERRILL TRUST CO. AND MAINE REAL ESTATE TITLE CO., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30151. Promulgated January 28, 1931.

*Herbert J. Connell, Esq.*, for the petitioners.
*John E. Marshall, Esq.*, for the respondent.

1396

TRAMMELL: The deduction, which was disallowed in whole by the respondent, embraced three items, namely, (1) debenture notes of the Bath Iron Works, Ltd., (2) first mortgage 5 per cent bonds of the Dayton, Covington & Piqua Traction Co., and (3) first mortgage bonds of the Rio Grande Southern Railroad Co.

In respect of the first item involved here, the record discloses that in 1922 and 1923, the petitioner, Merrill Trust Co., purchased, at par, debenture notes of the Bath Iron Works, Ltd., of the par value of $49,000. At December 31, 1924, the petitioner charged off $10,000 against the value of said notes, and deducted the amount from gross income in its return for said year. The debtor corporation at that time had outstanding $1,120,000 first mortgage bonds and owed banks more than $200,000 on its notes, in addition to the debenture notes, of which the $49,000 owned by the petitioner was a part. The holders of the first mortgage bonds and of the notes due the banks were preferred creditors over the holders of the debenture notes. The Merrill Trust Co. was a holder of common stock of the Bath Iron Works and was also trustee of the first mortgage bondholders. The petitioner was thus in a position to know accurately the financial condition of the debtor corporation. On January 1, 1924, the Bath Iron Works defaulted in payment of interest due on the first mortgage bonds and also defaulted in payment of interest due on the debenture notes, after having made default in the sinking fund late in 1923.

As trustee for the first mortgage bondholders, the petitioner in 1924 filed a bill in equity for foreclosure of the mortgage and for appointment of receivers. The receivers were appointed in August, 1924, at which time it was known that the assets of the iron works company were so disproportionate to its liabilities as to render its securities practically worthless, with the possible exception of the first mortgage bonds, and that collection could probably be made of only a small portion of the par value of those bonds. Subsequent events fully established these facts.

The assets of the debtor company were sold under foreclosure in September, 1925, for approximately $265,000, which paid only about 20 per cent of the first mortgage bonds. The debtor corporation was thus left wholly without assets and was dissolved. The holders of the debenture notes, as well as the holders of the other securities, including the notes due the banks and the preferred and common stock, received nothing from the liquidation. The entire amount of

the investments, other than the first mortgage bonds, was a complete loss.

The conditions existing in 1924 were known to the petitioner and those which subsequently occurred were reasonably anticipated, and in our opinion indicate the worthlessness in said year of its investment in the debenture notes. The petitioner is entitled, therefore, in computing its taxable net income for 1924, to deduct the said amount of $49,000 as a loss sustained in that year.

The two remaining items included in the deduction here in question will be considered together.

The traction company bonds were presented for payment on April 1, 1922, and were returned unpaid, default being made in payment of both principal and interest. A receiver was appointed for this company in 1922, and in 1927 the petitioner received $500 in final liquidation.

The railroad company defaulted in payment of interest due on its bonds on January 1, 1922, and the petitioner has never received anything thereon by way of liquidation. The testimony submitted in respect of the railroad bonds is approximately summarized in the proposed findings of fact contained in the petitioner's brief as follows:

On December 31, 1924, the petitoner charged off as a bad debt $1,625.00 against the purchase price of the Rio Grande Southern Bonds. This was because of the default in the payment of interest, together with the investigation which the company made from time to time during the year 1924 and the information obtained therefrom and from statistical sources. It was shown from the investigation that the bonds in question were not of much value.

The same statement, in effect, may be made respecting the evidence in reference to the traction company bonds.

The fact that default was made in the payment of interest, or principal and interest, is not alone sufficient evidence that the bonds thereby became worthless in the year of default or later, nor to show that a loss had been sustained, and we are not informed of the facts disclosed by the investigation made by the petitioner in 1924, nor what information was obtained therefrom or from statistical sources, other than it is said to have been shown that the bonds " were not of much value," which is purely a *conclusion* of fact.

From the record before us, we can not say that the bonds in question became worthless in 1924 and the petitioner is not entitled to a deduction as a loss in that year nor in our opinion is the petitioner entitled to a deduction on account of a debt ascertained to be worthless in part. In any event, the evidence is not sufficient to show that the petitioner ascertained that they were worthless in part. We can not determine the fact of ascertainment of worthlessness, which

1400

is a conclusion which this Board much reach, from the conclusions of witnesses alone in the absence of facts upon which their conclusions were based.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH dissents on the second and third points.