WALTER JASINSKI and FRANCES JASINSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jasinski v. Commissioner
Docket No. 2068-76.
United States Tax Court
T.C. Memo 1978-1; 1978 Tax Ct. Memo LEXIS 511; 37 T.C.M. (CCH) 1; T.C.M. (RIA) 780001; January 3, 1978, Filed *511 Held: Petitioners failed to prove that certain debentures became worthless in 1973. They are not entitled to a loss deduction under sec. 165(a), I.R.C. 1954. Walter Jasinski, pro se. John D. Steele, Jr., for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $1,192.45 in petitioners' income tax for the calendar year 1973. The only issue to be decided is whether under section 165, I.R.C. 1954, [1] a deductible loss was sustained by petitioners during 1973 on 6-1/2 percent subordinated debentures. Among other contentions, petitioners claim the debentures became worthless during 1973. FINDINGS OF FACT Petitioners Walter and Frances Jasinski filed a joint Federal income tax return for 1973 with the director, Internal *514 Revenue Service Center, Andover, Mass. They resided in North Tonawanda, N.Y., when their petition was filed. During January and February 1973 petitioners purchased $10,000 face value 6-1/2 percent subordinated debentures of First National Realty and Construction Corp. maturing on November 1, 1976. The debentures cost $6,334.59 and were purchased on a 30-percent margin. In March 1973 petitioners' broker increased the margin requirements for all bonds in petitioners' account to 35 percent. In November 1973, the broker called the full margin and petitioners paid the remaining balance due on the full purchase price of the above bonds.
Active trading in the debentures on the American Stock Exchange ceased in 1973. The interest due November 1, 1973, on the debentures was not paid when due. The unaudited balance sheet of First National Realty and Construction Corp. as of January 1, 1974, was as follows: FIRST NATIONAL REALTY & CONSTRUCTION CORP. BALANCE SHEET
JANUARY 1, 1974 (UNAUDITED) ASSETS
Operating Properties at Cost
Properties Held for Sale at Cost
$ 4,294,618.55
Deferred Charges
32,137.44
Cash
59,219.31
Accounts and Miscellaneous Receivables
74,084.60
Mortgage and Notes Receivable
190,067.01
Prepaid Expenses, Deposits, Escrows and Other
118,738.23
Investment at cost or below - Affiliate - Realty Equities
346,770.50
Investment in Subsidiaries
(3,533,932.20)
Advances to Subsidiaries
7,099,062.28
Notes and Accounts Receivable including interest due
from Affiliate - Realty Equities Corp.
1,791,644.59
TOTAL ASSETS
$10,472,410.31
LIABILITIES AND STOCKHOLDERS' EQUITY
Mortgages Payable
$ 3,164,978.92
Notes Payable - Banks
1,311,174.03
Other Notes Payable
105,000.00
6 1/2% Subordinated Debentures, due 11/1/76
1,986,500.00
Accounts Payable, Accrued Expenses and Sundry Liabilities
559,839.51
Notes and Accounts Payable including interest due
to Affiliate - Realty Equities Corp.
3,619.783.53
TOTAL LIABILITIES
$10,747,275.99
STOHKIOLDERS' DEFICIT
Capital Stock
246,224.30
Capital Surplus
8,155,865.43
Retained Earnings
(8,637,855.41)
Less - Notes Receivable
(39,100.00)
TOTAL STOCKHOLDERS' DEFICIT
$ (274,865.68)
TOTAL LIABILITIES AND STOCKHOLDERS' DEFICIT
$10,472,410.31
*515 On June 24, 1974, First National Realty and Construction Corp. filed a petition under chapter XI of the Bankruptcy Act. As of the date of trial in March 1977, First National Realty and Construction Corp. still was operating under chapter XI of the Bankruptcy Act. On their joint income tax return for 1973 petitioners reported interest income in the amount of $12,016.74. They also reported short-term and long-term capital losses in the amounts of $3,966 and $8,073, respectively, and claimed a capital loss deduction of $1,000. On their 1973 return petitioners also claimed a "casualty loss" deduction with respect to the debentures in the amount of $6,150 [2] less the $100 limitation, or $6,050. In the notice of deficiency respondent disallowed the entire amount of the claimed casualty loss for the reason that it had not been established that the loss was a casualty within the meaning of section 165 of the Code or that the loss was sustained during the year 1973. OPINION Section *516 165(a) authorizes a deduction for any loss "sustained" during the taxable year and not compensated for by insurance or otherwise. Under section 1.165-1(b), Income Tax Regs., a loss is sustained during the year in which the loss occurs as evidenced by closed and completed transactions, fixed by identifiable events. For individuals, the deduction under section 165(a) is limited by section 165(c) to (1) losses incurred in a trade or business, (2) losses incurred in any transaction entered into for profit, and (3) certain casualty and theft losses in excess of $100. Section 165(d) limits losses from wagering transactions to the extent of gains from such transactions. Under section 165(f) losses from the sale or exchange of capital assets are allowed only to the extent allowed in sections 1211 and 1212. And under section 165(g) if any security which is a capital asset becomes worthless during the taxable years, the loss resulting therefrom shall be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. At the trial and on brief petitioners claim that the debentures became worthless in 1973 and that their *517 investment therein should be allowed as a deduction either as a casualty loss, or a gambling loss, or a business loss. We would disagree even if it was proved that the debentures became worthless in 1973. Petitioners base their casualty loss claim on the theory that the president of the corporation either stole assets of the corporation or in some way swindled it. Not only is there no evidence to support this claim, but a theft of corporate property would not qualify as a casualty loss on petitioners' debentures in any event. To qualify as a casualty loss for petitioners, their property, rather than the property of the corporation, must have been damaged or destroyed by some sudden, unexpected, or unusual cause such as fire, storm, shipwreck or other similar casualty, Durden v. Commissioner,3 T.C. 1 (1944), or by theft. Petitioners claim of a gambling loss is based on the theory that in buying these low-priced high-yield debentures they were gambling and since they reported the interest received therefrom as ordinary income they should be entitled to deduct their *518 loss on their investment to the extent of the interest received under section 165(d). The short answer to this is that interest income is not wagering income and investing in capital assets is not a wagering transaction in the sense those terms are used in section 165(d). Petitioners offered no evidence to prove that their alleged loss was incurred in their trade or business. They attempt to relate the loss to the fact that they had interest income but the collection of interest on investments does not constitute a trade or business. Since the purchase of the debentures was a transaction entered into for profit, any loss sustained would be allowable under section 165(c)(2). However, since the debentures were "capital assets," see sec. 1221, and "securities," see sec. 165(g)(2), absent an actual sale or exchange, under section 165(g)(1) any loss resulting from their worthlessness during 1973 would be treated as a loss from the sale or exchange, on the last day of the taxable year, of capital assets. These would be long-term capital losses, see sec. 1222(4), subject to the limitations on deductibility prescribed by sections 165(f) and 1211. Since petitioners did not sell *519 or exchange the debentures in 1973 they have the burden of proving that the debentures became worthless during 1973. As stated in section 1.165-5(c), Income Tax Regs., to claim a deduction for worthless securities the debentures must be shown to have become "wholly worthless" during the taxable year; no loss deduction is allowed for partial worthlessness or mere decline in value. To prove worthlessness in a particular year, ordinarily the taxpayer must prove first that the security had value at the beginning of the year and second that some identifiable event occurred during the year that caused the security to have no value at the end. Morton v. Commissioner,38 B.T.A. 1270 (1938), affd. 112 F.2d 320 (7th Cir. 1940). However, since the debentures involved were purchased in 1973, we do not have the question of value at the beginning of the year and attention here is solely on whether worthlessness was fixed by identifiable events in 1973. *520 The identifiable (events) must clearly evidence that no probability of realization of anything of value from sale, liquidation, or otherwise, thereafter existed. Watson v. Commissioner,38 B.T.A. 1026 (1938). Applying these standards, we find that petitioners have not met their burden of proving that their debentures became worthless during 1973. The only evidence of worthlessness occurring during 1973 is that active trading in the debentures on the American Stock Exchange ceased in 1973 and that the corporation defaulted in making its interest payment due November 1973. But these facts alone are inconclusive. Compare West End Pottery Co. v. Commissioner,7 B.T.A. 927 (1927) (no readily available market); Merrill Trust Co. v. Commissioner,21 B.T.A. 1395 (1931) (default in payment of interest or principal). In particular, petitioners have failed to show that the debentures had no potential value in 1973. The only evidence in the record on this point is an unaudited First National Realty & Construction Corp. balance sheet dated January 1, 1974, reporting that liabilities exceeded the cost of assets. However, it does not *521 purport to show the value of the assets, only their book values. Furthermore, if the investments in, advances to, and receivables from subsidiaries are ignored on the asset side of the balance sheet, and the notes and accounts payable to the subsidiaries, along with the debentures themselves, are ignored on the liabilities side, we find that the corporation had other substantial assets having a total book value of $5,115,635 and liabilities to others of only $4,581.53. This would indicate that there was some excess of asset values over liabilities that would be available to the debenture holders. Moreover, the corporation was still operating outside of bankruptcy in 1973; it did not file a petition in bankruptcy until June 24, 1974. The continued operation of the business outside of bankruptcy supports a finding that petitioners' debentures were not wholly worthless in 1973. Compare Morton v. Commissioner,supra (worthlessness depends not only on current liquidating value but also on what value may be acquired through foreseeable operations). In short, no identifiable event in 1973 has been shown to fix a total loss of potential value in that year. Because *522 petitioners have failed to prove that a loss was sustained in 1973, we hold that no deduction is allowable under section 165(a). Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. We have no explanation of why the amount claimed was less than the $6,334.59 paid for the debentures.↩